IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Craig B. Shaffer

Civil Action No. 14-cv-01707-CBS

MONA ELHELBAWY,
        Plaintiff,
v.

PENNY PRITZKER, Secretary, U.S. Department of Commerce,
        Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

This civil action comes before the court on: (1) Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), and (2) Plaintiff's Motion for Leave to File Amended Complaint.   This case was directly assigned to Magistrate Judge Craig B. Shaffer pursuant to the Pilot Program to Implement the Direct Assignment of Civil Cases to Full Time Magistrate Judges. The court has reviewed the Motions, Ms. ElHelbawy's Response (Doc. # 25), Defendant's Reply (Doc. # 42), the hearings held on November 18, 2014, December 17, 2014, February 13, 2015, February 20, 2015, and March 20, 2015 (*See* Courtroom Minutes/Minute Orders (Docs. # 23, # 35, # 37, # 41, # 44)), the pleadings, the entire case file, and the applicable law and is sufficiently advised in the premises.

I.      Standard of Review

Defendant, the Secretary of the Department of Commerce, has moved to dismiss the Second Amended Complaint ("SAC") for lack of subject matter jurisdiction and failure to state a claim to which relief can be granted pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter."   Defendant's assertion that Ms. ElHelbawy failed to exhaust her administrative remedies before the Merit Systems Protection Board ("MSPB") constitutes a challenge to the allegations of subject matter in the SAC.   *See Jones v. Runyon,* 91 F.3d 1398, 1399 (10th Cir. 1996) ("Exhaustion of administrative remedies is a 'jurisdictional prerequisite' to suit under Title VII.");   *Jones v. United Parcel Service, Inc.,* 502 F.3d 1176, 1183 (10th Cir. 2007) ("Title I of the ADA requires a plaintiff to exhaust her administrative remedies before filing suit" and "[i]n the Tenth Circuit, exhaustion of administrative remedies is a jurisdictional prerequisite to suit.").   The burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

To withstand a motion to dismiss under Rule 12(b)(6), a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).   The burden is on the plaintiff to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief.   *Twombly*, 550 U.S. at 556.

Because Ms. ElHelbawy appears pro se, the court reviews the "pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."   *Trackwell v. United States Govt*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted).   *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a pro se complaint "to less stringent standards than formal pleadings drafted by lawyers").   However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based."   *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in

2

ways that a plaintiff has not alleged.   *See Whitney v. State of New Mexico*, 113 F.3d 1170,

1173-74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a

plaintiff's complaint");   *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the

court may not "construct arguments or theories for the plaintiff in the absence of any discussion of

those issues").

II.   Procedural Background

Ms. ElHelbawy was employed as an electronics engineer at the Institute for

Telecommunication Sciences, National Telecommunications and Information Administration,

U.S. Department of Commerce ("DOC") in Boulder, Colorado.   On September 21, 2011, Ms.

ElHelbawy filed a Complaint of Employment Discrimination with the DOC's Office of Civil Rights,

alleging discrimination on the basis of her sex (female), race (Middle-Eastern), national origin

(Egyptian), religion (Abrahamic), and in retaliation.   (*See* Doc. # 1-2 at 24 of 37; Declaration of

Christiann Colpoys Burek, Exhibit 1 to Defendant's Motion (Doc. # 19-1) at 6 of 44).[1]   On July 10,

2012, Ms. ElHelbawy requested a hearing before an EEOC judge.   (*See* Doc. # 19-1 at 2 of 44, ¶

4; Doc. # 19-3 at 1 of 65).   Administrative Judge Nancy Weeks in the Denver Field Office held a

hearing on the EEO complaint on July 25, 2013.   (*See id.* at ¶ 6; Doc. # 19-3 at 8 of 65).

When Ms. ElHelbawy stated in January of 2014 that she intended "to file a case in federal

court on the issues of this complaint," Administrative Judge Weeks dismissed the case and

remanded to the DOC's Office of Civil Rights for a Final Agency Decision.   (*See* Doc. # 19-1 at 2

of 44, ¶ 7; Doc. # 19-3 at 8 of 65).   On April 1, 2014, DOC's Office of Civil Rights issued its "Final

Agency Decision Without a Hearing," finding "no violation of Title VII or the Rehabilitation Act with

---

[1]        The court has wide discretion to allow affidavits and other documents to resolve disputed
jurisdictional facts.   *Widjaja v. Nicholson*, No. CIV.A. 08-cv-00204-MSK-MEH, 2009 WL 321875, at *3 (D.
Colo. Feb. 9, 2009).

respect to the matters alleged." (*See* Doc. # 19-3 at 57 of 65).   The Final Agency Decision advised Ms. ElHelbawy that a civil action in Federal District Court must be filed within 90 calendar days of the date of the receipt of the final order.   (*See id.* at 59 of 65).   Ms. ElHelbawy received the Final Decision by certified mail on April 9, 2014.   (*See* Doc. # 19-1 at ¶ 9; Doc. # 19-3 at 65 of 65).

On November 15, 2012, the agency removed Ms. ElHelbawy from her job on charges of being AWOL and failing to follow procedures to request leave.   *ElHelbawy v. Department of Commerce*, No. DE-0752-13-0130-I-2, 2014 WL 2853621 (M.S.P.B. June 20, 2014).   (*See also* Doc. # 1-1 at 62-72 of 72; Doc. # 1-2 at 1-15 of 37; Doc. # 19-2 at 20-50 of 56).   On December 14, 2012, Ms. ElHelbawy appealed her removal to the MSPB and asserted as an affirmative defense that the agency discriminated against her.   (*See id.*; 5 U.S.C. § 7702(a)(1); Doc. # 19-1 at 2 of 44, ¶ 5, 9-23 of 44).   In her appeal, she claimed discrimination based on gender, race, color, religion, national origin, and disability, retaliation for her prior EEO activity, whistleblower claims, prohibited personnel practices, and harmful procedural error.   (*See* Doc. # 19-1 at 12-22 of 44). Administrative Law Judge ("ALJ") Patricia Miller in the Denver Field Office held a hearing on the MSPB appeal on March 19 and 20, and April 3, 2014.   (*See* Doc. # 19-1 at ¶ 8; Doc. # 19-4 at 3 of 73).   On June 20, 2014, ALJ Miller issued an Initial Decision finding that the agency had proven its misconduct charges; that Ms. Elhelbawy failed to prove her affirmative defenses; and that the penalty of removal was reasonable.   (*See* Doc. # 19-1 at ¶ 10; Exhibit 4 to Defendant's Motion, Doc. # 19-4 at 2-23 of 73; *ElHelbawy*, 2014 WL 2853621).   Ms. ElHelbawy was advised that the Initial Decision would become final on July 25, 2014 unless she filed a petition for review by that date.   (*See* Doc # 19-4 at 18 of 73; Doc. # 19-1 at ¶ 10; *ElHelbawy*, 2014 WL 2853621). She was also advised that she had the right to seek further review of the final decision by the

EEOC or a federal court.   (*See id.*).

Ms. ElHelbawy filed a Petition for Review with the MSPB on July 26, 2014.   (*See* Exhibit 5 to Defendant's Motion (Doc. # 19-4); Doc. # 19-1 at ¶ 11).   On July 28, 2014, the Office of the Clerk of the Board for the MSPB issued a notice acknowledging receipt of her Petition for Review and explaining that it was untimely.   (*See* Exhibit 6 to Defendant's Motion (Doc. # 19-4 at 40 of 73; Doc. # 19-1 at ¶ 12).   With permission, on August 1, 2014, Ms. ElHelbawy filed a Motion to Accept Filing as Timely and/or to Ask the Board to Waive or Set Aside the Time Limit.   (*See* Exhibit 7 to Defendant's Motion (Doc. # 19-4 at 49 of 73); Doc. # 19-1 at ¶ 13).   The agency filed its response to her Petition for Review on August 22, 2014.   (*See* Exhibit 8 to Defendant's Motion (Doc. # 19-4 at 51 of 73); Doc. # 19-1 at ¶ 14).   After several of Ms. ElHelbawy replies were rejected on procedural grounds, the MSPB permitted her to file a reply on or before September 17, 2014.   (*See* Exhibit 9 to Defendant's Motion (Doc. # 19-5) at 2-5 of 91; Doc. # 19-1 at ¶ 15).   Ms. ElHelbawy filed her "Response to Agency Representative's Response" ("Reply") on September 18, 2014.   (*See* Exhibit 10 to Defendant's Motion (Doc. # 19-5 at 7-91 of 91); Doc. # 19-1 at ¶ 16).   The MSPB issued a Final Order on June 16, 2015, denying Ms. ElHelbawy's Petition for Review and affirming the Initial Decision of Administrative Judge Miller.   *See ElHelbawy v. Department of Commerce*, No. DE-0752-13-0130-I-2, 2015 WL 3750738 (M.S.P.B. June 16, 2015).   The MSPB forwarded her individual right of action ("IRA") to the field office for adjudication.[2]

---

[2]      In her initial appeal to the MSPB, Ms. ElHelbawy indicated that on June 25, 2012, she disclosed to the agency's Office of Inspector General that the agency committed safety violations in contravention of Occupational Safety and Health Administration laws.   *ElHelbawy*, 2015 WL at 3750738.   She also indicated that she filed a complaint with the Office of Special Counsel ("OSC") on August 8, 2012 concerning the same allegations.   *Id.*   She attached copies to her appeal of two complaints she filed with OSC, one dated August 6, 2012, and the other dated November 14, 2012.   *Id.*   (*See also, e.g.*, Doc. # 19-1 at 36-40 of 44, Doc. # 19-2 at 3-6 of 56).   In the August 2012 complaint, she alleged that she disclosed safety hazards that she believed existed at the agency and the agency's failure to correct these reported health issues.   *Id.*   She also alleged that the agency falsified her time and attendance records

On June 19, 2014, one day before ALJ Miller issued her Initial Decision, Ms. ElHelbawy filed this civil action.   (*See* "Title VII Complaint" (Doc. # 1).   At the direction of the court, she filed her Amended Complaint on July 28, 2014.   (*See* Doc. # 6).   Without complying with Fed. R. Civ. P. 15, she filed her Second Amended Complaint ("SAC") on July 29, 2014.   (*See* Doc. # 7).   On October 27, 2014, Defendant filed her Motion to Dismiss the SAC.   Ms. ElHelbawy withdrew a subsequently tendered pleading (Doc. # 22) as improvidently filed.   (*See* Courtroom Minutes/Minute Order (Doc. # 23)).   When Ms. ElHelbawy expressed that she wished to file a Third Amended Complaint, the court afforded her additional time.   (*See* Courtroom Minutes/Minute Orders (Docs. # 23, # 35, # 37)).   On February 17, 2015, she filed her Motion for Leave to File a Third Amended Complaint without submitting a proposed Third Amended Complaint.   (*See* Doc. # 39).

In the operative pleading, the SAC, Ms. ElHelbawy alleges discrimination, hostile work environment, and retaliation based on her race, national origin, and religion in violation of Title VII of the Civil Rights Act of 1964.   (*See* SAC (Doc. # 7)).   She also alleges discrimination "based on her disability in violation of the Rehabilitation Act of 1973, 29 U.S.C. 791, as amended by the Americans with Disabilities Act," retaliation "in violation of the Whistleblower Act, 5 U.S.C. 2301, *et seq.* as amended," violations of the Privacy Act, 5 U.S.C. § 552a(b), and violations of the Fair

---

when it charged her as AWOL, unlocked and searched her office without her permission "and for no proper justification," and then left her office unlocked, thereby compromising the confidentiality of certain records. *Id.*   She asserted that, as a result of these disclosures, the agency took various personnel actions against her, such as reporting her as AWOL, denying her requests for telework and reasonable accommodation, prohibiting her from filing Office of Workers' Compensation Programs ("OWCP") claims, and providing her with an "[u]nfair performance review evaluation" in November 2011.   *Id.*   In the November 2012 OSC complaint, she reiterated many of the same alleged disclosures and personnel actions that she raised in her earlier complaint.   *ElHelbawy*, 2015 WL at 3750738.   (*See also* Doc. # 19-2 at 3-6 of 56).   She stated that because of her alleged disclosures, the agency engaged in a series of "harsh and cruel reprisal actions," such as giving her "unjustified performance reviews and ratings," changing her position description while she was out on leave under the Family and Medical Leave Act, and eventually removing her.   *Id.*   The MSPB found that she had attempted to raise her whistleblower claims as a separate IRA appeal, which was not adjudicated.   The MSPB therefore forwarded the IRA appeal to the field office for adjudication.   *Id.*

6

Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").   (*See* Doc. # 7 at 2, 8, 11-13, 16 of 19).


III.   Exhaustion of Administrative Remedies

"[T]he United States government is immune from suit in federal court under the principle of sovereign immunity."   *Perry v. O'Neil*, 212 F. Supp. 2d 99, 106 (E.D.N.Y. 2002) 9citation omitted). "Such immunity extends to the agencies and officers of the United States."   *Id.*   The United States Department Commerce is a federal agency, and its Secretary is a federal officer. "If Congress wants to waive the federal government's sovereign immunity, it must do so with clear and unequivocal statutory language."   *Perry*, 212 F. Supp. 2d at 106 (internal quotation marks and citation omitted).   "If the government has not waived its sovereign immunity, or if the conditions under which the government has agreed to waive that immunity have not been met, federal subject matter jurisdiction does not exist and a district court must dismiss the case."   *Id.*

"Congress amended Title VII of the Civil Rights Act of 1964 and waived the federal government's sovereign immunity for suits alleging discrimination in a government workplace on the basis of race, sex, color, religion or national origin."   *Perry*, 212 F. Supp. 2d at 106 (citing 42 U.S.C. S 2000e-16(a) (1994)).   "However, Congress limited this waiver of immunity on the condition that government employees first exhaust their administrative remedies as defined by the statute and regulations promulgated thereunder."   *Id.* (citing 42 U.S.C. S 2000e-16(c) (1994); *Brown v. General Servs. Admin.*, 425 U.S. 820, 835 (1976)).   "A federal employee's failure to exhaust administrative remedies or failure to abide by the prescribed time provisions does not trigger the waiver of sovereign immunity and a district court is deprived of subject matter jurisdiction to decide that employee's case."   *Perry*, 212 F. Supp. 2d at 106 (citation omitted). *See also Coffman v. Glickman*, 328 F.3d 619, 624 (10th Cir. 2003) (federal employees "are

required to exhaust applicable administrative remedies prior to seeking judicial review").

Congress passed the Civil Service Reform Act ("CSRA"), creating the MSPB, "a quasi-judicial agency with jurisdiction to adjudicate federal employee appeals of agency personnel actions." *Lange v. Norton*, No. CIV.05-441-HA, 2006 WL 516811, at *1 (D. Or. Mar. 2, 2006) (citing 5 U.S.C. § 1201 *et seq.*, 5 U.S.C. § 7701) (case citation omitted). "The MSPB is authorized to review adverse employment actions that fall into one of five categories: removal, suspension for more than fourteen days, a reduction in grade, a reduction in pay, or a furlough of thirty days or less." *Id.* (citing 5 U.S.C. § 7512(1)-(5) (case citation omitted). "The MSPB is also granted pendent jurisdiction to hear claims of discrimination brought in connection with an adverse employment action for which it has jurisdiction." *Lange*, 2006 WL 516811, at *2 (citing 29 C.F.R. § 1614.302 (2000) (case citation omitted)). "A federal employee has the option of bringing such a claim of discrimination before the MSPB, or exhausting all administrative remedies and filing the claim with the United States District Court pursuant to Title VII of the Civil Rights Act of 1964." *Lange*, 2006 WL 516811, at * 2. "Review of a MSPB determination which does not involve claims of unlawful discrimination is conducted by the United States Court of Appeals for the Federal Circuit." *Coffman*, 328 F.3d at 621 (citing 5 U.S.C. § 7703(b)(1)(d); 28 U.S.C. § 1295(a)(9)) (case citations omitted). "However, when an appeal to the MSPB involves claims of unlawful discrimination related to or stemming from the employment action, it is considered a 'mixed' appeal." *Id.* (citing 29 C.F.R. 1614.302(a)(1) (case citations omitted). "Review of MSPB determinations in 'mixed' cases lies solely in a district court." *Coffman*, 328 F.3d at 621-22 (citing 5 U.S.C. § 7703(b)(2) (case citations omitted).

The SAC in this case is "mixed" in nature because Ms. ElHelbawy challenges her removal from employment and alleges discrimination under Title VII and the Rehabilitation Act. "Under

8

the CSRA, an employee may file a civil action for a trial de novo in district court within 90 days of

receiving a final decision from the MSPB in a mixed case appeal." *Harms v. Internal Revenue

Service*, 146 F. Supp. 2d 1128, 1134 (10th Cir. 2001) (citing 5 U.S.C. §§ 7702(a)(3)(A), 7703(b)(2)

and (c)).   The district court "is charged with jurisdiction over any mixed case appeal that the

Board resolves either on the merits or on procedural grounds." *Conforto v. MSPB*, 713 F.3d

1111, 1116 (Fed. Cir. 2013).

      "When a complainant appeals to the MSPB, . . . the matter is assigned to an Administrative

Judge who takes evidence and eventually makes findings of fact and conclusions of law." *Butler

v. West*, 164 F.3d 634, 640-43 (D.C.Cir. 1999) (citing 5 C.F.R. §§ 1201.41(b), 1201.111).   "The

AJ's initial decision becomes a final decision if neither party, nor the MSPB on its own motion,

seeks further review within thirty-five days." *Id.* (citing 5 C.F.R. § 1201.113).   "However, both the

complainant and the agency can petition the full Board to review an initial decision." *Id.*  "Should

the Board deny the petition for review, the initial decision becomes final; if the Board grants the

petition, its decision is final when issued." *Id.* (citations omitted).   "At this point, the complainant

again has a choice: within thirty days of receiving a final decision from the MSPB, she can either

appeal the discrimination claim to the EEOC, or appeal the entire claim (or any parts thereof) to

the appropriate district court." *Id.* (citing 5 U.S.C. § 7703(b), 5 C.F.R. § 1201.175, 29 C.F.R. §

1614.310(b)).   "Finally, if the MSPB fails to render a judicially reviewable decision within 120

days from the filing of a mixed case appeal, the aggrieved party can pursue her claim in federal

district court." *Id. (citing* 5 U.S.C. § 7702(e)(1)(B)).

      Here, the MSPB issued its Final Order on June 16, 2015, denying Ms. ElHelbawy's Petition

for Review and affirming the Initial Decision of Administrative Judge Miller.   *See ElHelbawy*, 2015

WL at 3750738.   Ms. ElHelbawy filed her Petition for Review of the Initial Decision on July 26,

2014.   She initiated this case prematurely on June 19, 2014, before the MSPB had issued a final

order.   Nevertheless, the court concludes that it may assert jurisdiction notwithstanding the fact

that the MSPB had yet to render a final decision when Ms. ElHelbawy filed this case.   *See Butler*

*v. West*, 164 F.3d 634, 640-43 (D.C.Cir. 1999) ("[A]lthough the MSPB does not lose its jurisdiction

when 120 days elapse without a final decision, the appropriate federal district court can take

jurisdiction as well");   *Sorrells v. Veterans Administration*, 576 F. Supp. 1254, 1260-61 (S.D. Ohio

1983) (concluding that plaintiff exhausted his administrative remedies pursuant to statutory

sections conferring upon claimant the right to file a civil action after giving the MSPB 120 days

opportunity to act).


IV.   First Claim for Relief for Discrimination in Violation of Title VII Based on Race, National

Origin, Religion, and Hostile Work Environment

Ms. ElHelbawy alleges a Title VII claim for disparate treatment and hostile work

environment "based on her race (Middle-Eastern)/National Origin (Egyptian) and Religion

(Muslim)."   (*See* Doc. # 7 at 5 of 19).   Title VII makes it unlawful for an "employer" to "refuse to

hire or to discharge any individual, or otherwise to discriminate against any individual with respect

to his compensation, terms, conditions, or privileges of employment, because of such individual's

race, color, religion, sex, or national origin."   *See* 42 U.S.C. § 2000e–2(a)(1).

On the discrimination claims, "the complainant shall have the right to have the facts subject

to trial de novo by the reviewing court."   *Butler*, 164 F.3d at 639 n. 10 (quoting 5 U.S.C. §

7703(c)).   *See also Sloan v. West*, 140 F.3d 1255, 1260 (9th Cir. 1998) ("The district court

reviews the MSPB's determination of the non-discrimination claim[s] under a deferential standard

pursuant to 5 U.S.C. § 7703(c), but reviews the discrimination claim[s] de novo.") (citation

omitted);   *Young v. West,* No. 97-2066, 149 F.3d 1172, 1998 WL 340388, at * 5 (4th Cir. June 16,

1998) ("it would not have been proper for the district court to allow an MSPB ALJ's factual findings

to control the court's de novo review of the Title VII discrimination claims.   Rather, the court

would be required to review de novo all the facts underlying the Title VII discrimination claims

when evaluating those claims . . . .");   *Taylor v. Alexander*, No. 93-1497, 39 F.3d 1192, 1994 WL

584571, at * 1 n. 2 (10th Cir. Oct. 25, 1994) (in a mixed case, the district court conducts a de novo

trial on Title VII claims).[3]

        In order to survive Defendant's motion to dismiss, Ms. ElHelbawy "must nudge [ ][her]

claims across the line from conceivable to plausible."   *Ridge at Red Hawk, L.L.C. v. Schneider*,

493 F.3d 1174, 1177 (10th Cir. 2007) (internal quotation marks and citation omitted).   "[T]he

mere metaphysical possibility that some plaintiff could prove *some* set of facts in support of the

pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff

has a reasonable likelihood of mustering factual support for *these* claims."   *Id.*   "Put another

way, in light of *Twombly*, Rule 8(a)(2) requires a 'showing' rather than a blanket assertion of an

entitlement to relief."   *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008).   "[W]ithout

some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she

provide not only 'fair notice,' but also the 'grounds' on which the claim rests."   *Id.* (citing *Twombly*,

127 S.Ct. at 1965 n. 3).   "After *Twombly*, it is no longer sufficient to allege mere elements of a

cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct."

*Id.* at 233 (quoting *Twombly*, 127 S.Ct. at 1965 n. 3).

        A complaint alleging employment-based discrimination under Title VII must "make at least

_____

[3]        "The district court reviews nondiscrimination claims on the administrative record, and will set aside
the MSPB's determinations only when arbitrary, capricious, an abuse of discretion, or otherwise not in
accordance with law; obtained without procedures required by law, rule or regulation having been followed;
or unsupported by substantial evidence."   *Butler*, 164 F.3d at 639 n. 10 (internal quotations marks and
citation omitted).

minimal factual allegations on every element" of the claim.   *Rivera v. Southwestern Bell Tel. Co.*,

No. 13-1039-RDR, 2013 WL 2319395, at *2 (D. Kan. May 28, 2013) (internal quotation marks and

citation omitted).   "Vague references to discrimination, retaliation or harassment without any

indication that the alleged misconduct was motivated" by a category protected by Title VII "will be

insufficient to support an employment-based claim."   *Id.*   (citation omitted).   *See also Pittman v.*

*Am. Airlines, Inc.*, No. 14-CV-0728-CVE-FHM, 2015 WL 2354439, at *7 (N.D. Okla. May 15,

2015) ("A claim may be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) when . . . the complaint fails

to contain sufficient facts, either direct or inferential, that support each element of a legally

cognizable claim.") (internal quotation marks and citations omitted).   In order to state a claim for

disparate treatment on the basis of a protected characteristic under Title VII, Ms. ElHelbawy must

allege (1) she belongs to a protected class; (2) she suffered an adverse employment action; and

(3) "disparate treatment among similarly situated employees."   *Carney v. City & Cnty. of Denver*,

534 F.3d 1269, 1273 (10th Cir. 2008).   To support a claim of disparate treatment, she must allege

and prove she was similarly situated to other employees "in all relevant respects."   *McGowan v.*

*City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006).   "Similarly situated employees are those who

deal with the same supervisor and are subject to the same standards governing performance

evaluation and discipline."   *Aramburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir.1997).

Ms. ElHelbawy presents no more than conclusory allegations, devoid of any facts,

concerning the elements of her Title VII claims.   She identifies two possible discrete acts of

discrimination: denial on June 5, 2012 of her request for telework, and removal from her

employment on November 15, 2012.   (*See* Doc. # 7 at 5 of 19, ¶ 9, 7 of 19, ¶ 23).   In support of

her claim based on race and national origin, she merely alleges that "Defendant DOC treated

Plaintiff less favorably than similarly situated employees who are not Middle-Eastern/Egyptian/

12

Muslim" and "discriminated against Plaintiff in the terms and conditions of her employment on the basis of her protected group status (Middle-Eastern/Egyptian/Muslim)." (*See* Doc. # 7 at 5 of 19, ¶¶ 2-4).   She identifies no other employees or their race, national origin, or religion.   She identifies no other employees who committed similar attendance infractions but were not similarly treated.   She fails to state whether she had the same supervisor as other employees who were treated more favorably.   She presents no facts supporting her conclusory allegation and fails to plausibly allege disparate treatment on the basis of race, national origin, or religion.   *See Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (plaintiff's allegations "not entitled to the assumption of truth because they are entirely conclusory");   *Gutierrez v. GEO Grp., Inc.*, No. 11-cv-02648-PAB-KLM, 2012 WL 2030024, at *2 (D. Colo. June 6, 2012) ("Because plaintiff recites that he was treated less favorably than similarly situated Caucasian employees and was not promoted because of his race, but offers not a single fact supporting these conclusory statements, the Court will dismiss plaintiff's Title VII claim for discrimination.");   *DePayan v. Wend-Rockies, Inc.*, No. 07-cv-02520-LTB-MEH, 2008 WL 2168780, at * 4 (D. Colo. May 21, 2008) (finding allegation consisting "solely of conclusory contention" that plaintiff was "discriminated against by her supervisors because of her national origin . . . when compared to the more favorable treatment received by her coworkers . . . factually insufficient" to "raise a right to relief above the speculative level.") (citing *Robbins v. Oklahoma*, 519 F.3d at 1247).   Plaintiff fails to state a claim for relief for discrimination in violation of Title VII based on her race, national origin, or religion.

       "The elements of a hostile work environment claim are: (1) the plaintiff is a member of a protected group; (2) the plaintiff was subjected to unwelcome harassment; (3) the harassment was based on the protected characteristic . . . ; and (4) the harassment was sufficiently severe or

pervasive to alter a term, condition, or privilege of the plaintiff's employment and created an abusive working environment." *Asebedo v. Kan. State. Univ.*, 559 F. App'x 668, 670 (10th Cir. 2014) (citation omitted).   To support a claim for a hostile work environment, Ms. Elhelbawy must show that under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privilege of employment, and (2) the harassment stemmed from discriminatory animus. *Hare v. Donahoe*, 608 F. App'x 627, 630-31 (10th Cir. 2015) (citation omitted). *See also Edwards v. Prime, Inc.*, 602 F.3d 1276, 1300 (11th Cir. 2010) (noting that post-*Twombly*, a plaintiff must allege a prima facie case of hostile work environment discrimination).

"The United States Supreme Court [h]as made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment." *McElroy v. Am. Family Ins. Co.*, 51 F. Supp. 3d 1093, 1111-12 (D. Utah 2014) (internal quotation marks and citation omitted). "Conduct that is not severe or pervasive enough to create . . . an environment that a reasonable person would find hostile or abusive — is beyond Title VII's purview." *Id.* "The harassment's severity and pervasiveness are evaluated according to the totality of the circumstances, considering such factors as the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *McElroy*, 51 F. Supp. 3d at 1111-12 (citation omitted).

In support of her claim for harassment and hostile environment, Plaintiff alleges that Defendant "engaged in a pattern of intimidation and harassment conduct that unreasonably interfered with Plaintiff's performance and created what any reasonable person in her position would have found offensive unsafe and intolerable work environment." (*See* Doc. # 7 at 5 of 19,

14

¶ 6.   Ms. ElHelbawy's allegations are devoid of severe or pervasive harassment.   The SAC alleges that "Defendant['s] actions included: entering Plaintiff's office in secret without permission and for no justifiable reason, searching Plaintiff's belongings on numerous occasions, stalking the Plaintiff outside the work-place and outside scheduled work hours, making inquiries about the Plaintiff at their personal residence, violating Plaintiff's Privacy, collecting pictures of the Plaintiff outside of work and outside scheduled work hours, and acting in such a manner that is very suspicious, extremely frightening and threating to the Plaintiff's Safety [sic]."   (*See* Doc. # 7 at 5 of 19, ¶ 7).[4]   These allegations do not plausibly show that Ms. ElHelbawy was subjected to a hostile work environment.   These facts do not support a finding that "the workplace was permeated with discriminatory intimidation, ridicule, and insult, . . . sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment."   *See Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 (10th Cir. 2007) (quotation and citation omitted).   She has not alleged how these actions were "so objectively offensive as to alter the conditions of [her] employment."   *Harsco Corp. v. Renner*, 475 F.3d 1179, 1187 (10th Cir. 2007) (internal quotation marks and citation omitted).   Plaintiff has failed to allege the pervasive or severe conduct required to meet the threshold for a hostile work environment claim.

Ms. ElHelbawy's allegations are also devoid of any discriminatory intent.   She does not plead facts to support that the allegedly harassing actions were motivated by racial, religious or national origin-related animus.   *See Herrera*, 474 F.3d at 680 (stating that victim must show that she was targeted for harassment because of her race or national origin to state a claim of hostile work environment);   *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1327 (10th Cir. 2004) (plaintiff "must also produce evidence from which a rational jury could infer that she was targeted

[4]      Her allegation that "Defendant continues to make vicious, malicious, and knowingly false statements in connection with the Plaintiff's attendance, character and performance, to destroy Plaintiff's reputation and credibility" (*see* Doc. # 7 at 5 of 19, ¶ 8) relates to events after her termination and cannot plausibly support her claim of a hostile working environment.

for harassment because of her gender, race, or national origin") (citation omitted).   This failure

alone is a sufficient basis to grant Defendant's Motion on her hostile work environment claim.

*Chawla v. Lockheed Martin Corp.*, 69 F. Supp. 3d 1107, 1131 (D. Colo. 2014) (citation omitted).

Ms. ElHelbawy's allegations are not sufficient to state a claim for a hostile work environment.

        To the extent that Ms. ElHelbawy's discrimination claim asserts interference with her

application for workers' compensation benefits under the Federal Employees' Compensation Act

("FECA"), 5 U.S.C. §§ 8101-8152, (*see* Doc. # 7 at 6-7 of 19, ¶¶ 11-17, 27), she has not

exhausted any discrimination claim related to workers' compensation benefits.   In her September

21, 2011 Complaint of Employment Discrimination filed with the DOC's OCR, she did not raise

any claim related to workers' compensation benefits.   (*See* Doc. # 19-1 at 6 of 44).   The

allegations regarding workers' compensation appear to have arisen in 2012.   (See Doc. # 7 at

6-7 of 19).   The "Final Agency Decision Without a Hearing" did not recognize or address any

claim related to workers' compensation benefits.   (*See* Doc. # 19-3 at 7-57 of 65).   In the appeal

of her removal, Ms. ElHelbawy asserted and ALJ Miller accepted for adjudication her affirmative

defenses: discrimination based on race, color, gender, religion, national origin, and disability,

retaliation for her prior EEO activity, whistleblowing, and harmful procedural error.   *ElHelbawy*,

2014 WL at 2853621.   (*See also* Doc. # 19-1 at 12-22 of 44; Doc. # 19-3 at 17-19 of 65).   The

Initial Decision did not recognize or address any claim related to workers' compensation benefits.

(*See* Doc. # 19-3 at 9-11 of 65).   Ms. ElHelbawy's Petition for Review and the MSPB's Final

Order affirming the Initial Decision did not address any allegation of discrimination related to

workers' compensation.   *See ElHelbawy*, 2015 WL at 3750738.   (*See also* Doc. # 19-4).   To the

extent that the whistleblower claims that were forwarded by the MSPB to the field office as a

separate IRA appeal rely on an allegation that she was prohibited from filing OWCP claims, *see*

*ElHelbawy*, 2015 WL 3750738, at ¶¶ 12, 15, such claims have also not been exhausted.   The

court lacks subject matter jurisdiction over Ms. ElHelbawy's discrimination claim to the extent that

it asserts interference with her application for workers' compensation benefits under FECA.


V.   Second Claim for Relief for Discrimination in Violation of Rehabilitation Act Based on
     Disability

Ms. ElHelbawy alleges that Defendant discriminated against her "based on her physical

disability: irritant induced asthma, irritant vocal cord dysfunction, rhino-sinusitis, skin irritation

(allergic reaction to construction dust exposure during NIST building 1 renovation)" and that she

was "wrongfully separated . . . as a result of failure to provide reasonable accommodation."   (*See*

Doc. # 7 at 8 of 19, ¶ 1, 10 of 19, ¶ 29).   "The remedies, procedures and rights of Title VII govern

Rehabilitation Act claims."   *Moore v. Potter*, 716 F. Supp. 2d 524, 537 (S.D. Tex. 2008) (citing 29

U.S. C. § 794a(a)(1)).   "Furthermore, the Rehabilitation Act incorporates the standards used in

Americans with Disabilities Act ("ADA") claims, claims that are subject to the Title VII

burden-shifting analysis."   *Moore*, 716 F. Supp. 2d at 537 (citation omitted).   *See also* 29 U.S.C.

§ 791(f) ("The standards used to determine whether this section has been violated . . . shall be the

standards applied under title I of the Americans with Disabilities Act of 1990 (42 U.S.C. 12111 et

seq.) and the provisions of sections 501 through 504, and 510, of the Americans with Disabilities

Act of 1990 (42 U.S.C. 12201-12204 and 12210), as such sections relate to employment.").

To state a claim for discrimination based on disability, plaintiff must allege that: (1) she is a

disabled person within the meaning of the ADA; (2) she is "qualified," *i.e.*, that she is able to

perform the essential functions of the job, with or without reasonable accommodation; and (3) the

employer terminated her employment under circumstances which give rise to an inference that

the termination was based on her disability. *Morgan v. Hilti, Inc.*, 108 F.3d 1319 (10th Cir. 1997).

A "disability" for purposes of the ADA consists of "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment. . . ." 42 U.S.C. § 12102(1). "First, the plaintiff must have a recognized impairment; second, the plaintiff must identify one or more appropriate major life activities; and third, the plaintiff must show that the impairment substantially limits one or more of those activities." *Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1129 (10th Cir. 2003).   "The plaintiff must articulate with precision the impairment alleged and the major life activity affected by that impairment." *Id.* (internal quotation marks and citation omitted).

Ms. ElHelbawy's claim is deficient.   She has not alleged that her "occupational work-related injury" was permanent or that this injury limited any major life activity.   She does not allege that she was unable to perform a broad variety of jobs.   The court may consider here that Plaintiff never provided her employer medical documentation for her numerous absences from work or to establish any disability.   (*See* Exhibit A to original Complaint (Doc. # 1-1 at 48, 58, 62-64 of 72; Doc. # 1-2 at 14 of 37)).   *ElHelbawy*, 2014 WL at 2853621 (Exhibit 4 (Doc. # 19-4) at 5-9 of 73).[5]   That Ms. ElHelbawy requested accommodation in the form of full–time "telework" fails to support that she was substantially limited in the major life activity of working.   As she does

---

[5]       "[I]n deciding a motion to dismiss pursuant to Rule 12(b)(6), a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Willis v. Dep't Stores Nat. Bank*, No. 15-7007, 2015 WL 4979225, at *1 (10th Cir. Aug. 21, 2015) (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (citing Fed.R.Civ.P. 10(c)).   *See also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (in addition to the complaint, the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (In considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.);   *Hall v. Bellmon*, 935 F.2d at 1112 (written documents attached to the complaint as exhibits are considered part of the complaint for consideration in a Rule 12(b)(6) motion));   *Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985) ("[A] Rule 12(b)(6) motion is addressed to the face of the pleading. The pleading is deemed to include any document attached to it as an exhibit, Fed. R. Civ. P. 10(c), or any document incorporated in it by reference.").

not articulate any major life activity that is limited by her alleged disability, she fails to state the first element of the prima facie case. *Jackson v. City & Cnty. of Denver*, 628 F. Supp. 2d 1275, 1290 (D. Colo. 2008). Consequently, she also cannot plausibly allege a causal connection between her alleged disability and her termination. *See Zwygart v. Board of County Commissioners of Jefferson County, Kansas*, 483 F.3d 1086, 1090 (10th Cir. 2007) (third element of discriminatory discharge claim is that plaintiff suffered discrimination by an employer because of her disability). Claim Two is properly dismissed for failure to state a claim under the Rehabilitation Act.


VI.     Third Claim for Relief for Retaliation under Title VII

Ms. ElHelbawy claims that she was subjected to unlawful discrimination based on retaliation for filing an EEOC complaint on September 21, 2011. (*See* Doc. # 7 at 11 of 19). She contends that "Defendant failed to follow its own procedures and policies, and continued to make [a]rbitrary and [c]apricious decisions against Plaintiff in retaliation," and denied her request for telework. (*See id.* at ¶¶ 5, 7). Title VII forbids retaliation against an employee because she has "opposed" any practice made unlawful by Title VII, or because she has "participated . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). Protected activity is defined as either participation in a Title VII investigation or proceeding or opposition to practices unlawful under Title VII. 42 U.S.C. § 2000e–3(a). To state a prima facie case of retaliation, Ms. ElHelbawy must allege: "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action." *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1219 (10th Cir. 2013).

There are insufficient facts in the SAC to support the third element of a prima facie case, a

causal connection between the protected action and the adverse acts.   *See Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1202 (10th Cir. 2006).   Ms. ElHelbawy alleges that retaliatory conduct occurred on or after April 5, 2012, almost 7 months after her complaint to the EEOC.   Her request for full-time telework was denied in June of 2012, some 9 months after her complaint to the EEOC . The Tenth Circuit has held that "unless the [adverse action] is very closely connected in time to the protected activity, the plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation." *Meiners v. Univ. of Kansas*, 359 F.3d 1222, 1231 (10th Cir. 2004) (internal quotation marks and citation omitted).   "A six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation, but a three-month period, standing alone, is insufficient." *Id.* (finding protected conduct and an adverse action separated by two months and one week were "probably too far apart" to satisfy the causation element).   Ms. ElHelbawy does not allege other facts to suggest that her termination was a result of her protected conduct.   Her allegation that Defendant failed to follow its own procedures and policies does not state a claim.   *See E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1052 (10th Cir. 2011) (finding that evidence that company failed to abide by a contractual provision did not establish a causal connection).   In the public record are also the adjudications of the ALJ and the MSPB that Ms. ElHelbawy did not provide adequate medical documentation to justify her absences from work and that the agency appropriately denied her full-time telework request.   *See ElHelbawy*, 2014 WL 2853621 (Exhibit 4 (Doc. # 19-4) at 9-10 of 73);   *ElHelbawy*, 2015 WL 3750738, at ¶¶ 3-6.   Claim Three is properly dismissed for failure to state a claim for retaliation under Title VII.

VII.     Fourth Claim for Relief for Retaliation under the Whistleblower Protection Act

Ms. ElHelbawy alleges that Defendant retaliated against her "on the basis of her opposing unlawful discriminatory employment practices, and for filing of whistleblower complaints alleging prohibited personnel practices, abuse of authority, gross mismanagement and substantial and specific danger to public health and safety." (*See* Doc. # 7 at 12 of 19).   More specifically, she alleges that she was denied a government laptop to perform telework, denied approval of Leave Without Pay ("LWOP") from May 24, 2012 through June 4, 2012, denied permission for telework, and denied access to the DOC Boulder Laboratories on June 8, 2012.   (*See id.*).

Federal employees are protected from retaliation for "whistleblowing" activities under the Whistleblower Protection Act of 1989 ("WPA").   *See* 5 U.S.C. § 2302(b)(8).   To pursue her rights under the WPA, an employee must present a claim to the OSC of the MSPB.   *See* 5 U.S.C. § 1214(a)(1)(A).   The statutes set out a detailed procedure for the investigation and determination of such claims and the final decision is made by the MSPB.   See 5 U.S.C. § 1214(b) *et seq.*   A federal employee cannot bring a WPA action in federal court prior to submitting a complaint to the OSC and exhausting the WPA administrative procedures; exhaustion of those remedies is a jurisdictional prerequisite to suit under the WPA.   *McGarr v. Peters*, No. CIV-07-1373-D, 2008 WL 2778831, at *5-6 (W.D. Okla. July 11, 2008) (internal quotation marks and citation omitted).

First, the court lacks jurisdiction over Ms. ElHelbawy's whistleblower claim because it has not been exhausted.   The MSPB found that she "attempted to raise her whistleblower claims as a separate IRA appeal, which was not adjudicated." *ElHelbawy*, 2015 WL 3750738.   On June 16, 2015, the MSPB forwarded the IRA appeal to the field office for adjudication.

Second, to the extent that Ms. ElHelbawy may be alleging a "freestanding" claim under the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 2302(b)(8), "there can be no such

claim, due to preemption by the Civil Service Reform Act (CSRA)."   *Ryan v. Donley*, 511 F. App'x 687, 690 (10th Cir.), *cert. denied*, 134 S. Ct. 255 (2013) (citations omitted).   *See also Hardy v. Hamburg*, 69 F. Supp. 3d 1, 12 (D.D.C. 2014) ("[u]nder no circumstances does the [CSRA, as amended by the Whistleblower Protection Act,] grant . . . [a] District Court jurisdiction to entertain a whistleblower cause of action brought directly before it in the first instance.") (citation omitted); *Rivera v. United States*, 924 F.2d 948, 954 (9th Cir. 1991) ("The Whistleblower Protection Act of 1989 increases protections for whistleblowers, but it does so within the context of the CSRA."). The Fourth Claim for Relief is properly dismissed for lack of subject matter jurisdiction.


VIII.    Fifth Claim for Relief for Violation of the Privacy Act

Ms. ElHelbawy alleges that Defendant violated the Privacy Act, 5 U.S.C. § 552a(b), by failing to maintain accurate time and attendance records, failing to provide her with forms and copies of records, disclosing her "medical records to other individuals and other agencies without a written request by and prior consent of the Plaintiff," and misrepresenting her medical record. (*See* Doc. # 7 at 13-15 of 19).   "The Privacy Act of 1974, codified in part at 5 U.S.C. § 552a, contains a comprehensive and detailed set of requirements for the management of confidential records held by Executive Branch agencies."   *F.A.A. v. Cooper*, 132 S. Ct. 1441, 1446 (2012). "The Privacy Act directs agencies to establish safeguards to protect individuals against the disclosure of confidential records which could result in substantial harm, embarrassment, inconvenience, or unfairness to any individual on whom information is maintained."   *Id.* at 1450 (citations omitted).   "If an agency fails to comply with those requirements in such a way as to have an adverse effect on an individual, the Act authorizes the individual to bring a civil action against the agency."   *F.A.A. v. Cooper*, 132 S. Ct. at 1446 (citation omitted).   *See also Williams*

*v. McCausland*, 791 F. Supp. 992, 1000 (S.D.N.Y. 1992) ("The Privacy Act, 5 U.S.C. § 552a, provides that a civil cause of action for damages is available when an agency fails to comply with an individual's request for access to his record or information pertaining to him or fails to maintain accurate records concerning the individual that results in a determination adverse to that individual.") (citing 5 U.S.C. § 552a(g)(1)).

"Section (g) of the Act creates causes of action for four categories of agency misconduct." *Doe v. U.S. Dep't of Justice*, 660 F. Supp. 2d 31, 41 (D.D.C. 2009) (citing 5 U.S.C. § 552a(g)(1)). "The first two categories cover deficient management of records, by providing for the correction of any inaccurate or otherwise improper material in a record and for a right of access against any agency refusing to allow an individual to inspect a record kept on him." *Id.* (internal quotation marks and citation omitted). "The third category covers an agency's failure to maintain an adequate record on an individual that results in a determination adverse to that person." *Id.* "The fourth category covers any adverse effect from a failure [by the agency] to hew to the terms of the Act." *Id.*[6] Title 552a subsections (e)(5) and (e)(6) of the Act impose accuracy obligations that address certain specific situations. Subsection (e)(5) requires an agency to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination." 5 U.S.C. § 552a(e)(5). Subsection (e)(6) provides that an agency "make reasonable efforts to assure that [ ] records are accurate, complete, timely, and relevant for agency purposes" prior to disseminating such records. 5 U.S.C. § 552a(e)(6).

---

[6] Damages are not an available remedy for claims under Section 552(a)(g)(A) and (B). Damages are only an available remedy pursuant to §§ 552a(g)(C) and (D), where the court finds that the agency acted in a manner which was intentional or willful, and the plaintiff suffered adverse effects. *Singh v. U.S. Dep't of Homeland Sec.*, No. 1:12-CV-00498-AWI, 2013 WL 1704296, at *17 (E.D. Cal. Apr. 19, 2013), *report and recommendation adopted*, No. 1:12-CV-00498-AWI, 2013 WL 2474497 (E.D. Cal. June 7, 2013). Claims pursuant to §§ 552a(g)(C) and (D) seeking damages do not have any exhaustion requirements. *Singh*, 2013 WL 1704296, at *18 (citation omitted).

Ms. ElHelbawy seems to aver that the agency did not assure the accuracy of her time and attendance and other "workers' compensation" records before disseminating information to the OWCP in connection with her workers' compensation claim.   (*Id.* at ¶¶ 1-7).   Ms. ElHelbawy alleges that the agency erroneously charged her with eight hours of LWOP on April 23, 2012 and May 2, 2012, charged her with being AWOL on May 30, 2012, and informed the Department of Labor's Office of Workers Compensation ("OWCP") that she "stopped working all together on May 1, 2012 and has been reported as AWOL since May 3, 2012."   (*See* Doc. # 7 at 13 of 19, ¶¶ 3-5, 7).   To the extent that Ms. ElHelbawy alleges failure to maintain accurate time and attendance records, to state a claim for relief based on this provision of the Privacy Act, she must allege: (i) she has been aggrieved by an adverse determination; (ii) the agency failed to maintain her records with the degree of accuracy necessary to assure fairness in the determination, (iii) the inaccurate records were the proximate cause of the adverse determination; and (iv) the agency acted intentionally or willfully in failing to maintain accurate records.   *Gowan v. U.S. Dept. of Air Force*, 148 F.3d 1182, 1192 (10th Cir. 1998).

First, the alleged dissemination to OWCP, which is another "agency" under the Privacy Act, does not state a claim under subsection (e)(6).   *See Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 22 (D.D.C. 2005) ("The statutory language [of subsection (e)(6)] makes clear that this provision does not apply when information is disclosed within the agency or to another agency.").   Further, Ms. ElHelbawy has not adequately alleged a causal connection between dissemination of records and any adverse determination.   *See* § 552a(g)(1)(D)   She does not allege that the agency's submissions to OWCP had any effect at all.   (*See* Doc. # 7 at 13 of 19, ¶ 7).   Nor has she plausibly alleged that the agency failed to make "reasonable efforts to assure" that its records of her time and attendance were accurate.   The agency found her AWOL for 116 days.   (*See* Doc.

# 1-1 at 64 of 72 to Doc. # 1-2 at 3 of 37).   She does not allege any error in the agency's record for any days other than April 23, 2012; May 2, 2012; and May 30, 2012.   She does not allege facts that plausibly show that these few possible errors caused an adverse decision, where her removal was based on 116 AWOL absences.   She cannot plausibly state that she would not have been removed but for the inclusion of the few alleged errors among 116 unexcused absences.   "The Privacy Act was not meant to be a vehicle for litigating the truthfulness of the underlying information contained in an accurately recorded document."   *Hass v. U.S. Air Force*, 848 F. Supp. 926, 931-32 (D. Kan. 1994) (citation omitted).   *See also Feldman v. C.I.A.*, 797 F. Supp. 2d 29, 44-45 (D.D.C. 2011) ("While the Privacy Act allows for correction of factual errors, the Act does not provide a legal mechanism for federal employees to second-guess the judgments or conclusions of federal officials regarding adverse personnel decisions.") (citation omitted).

As to her second group of allegations that Defendant failed to provide her with "copies of documents and forms" (*see* Doc. # 7 at 13 of 19, ¶¶ 8-9, 14 of 19 ¶¶ 11-13), the Privacy Act permits a civil claim for a denial of access to records only when an agency "refuses to comply with a request under subsection (d)(1) of this section." 5 U.S.C. § 552a (g)(1)(B).   Subsection (d)(1), in turn, requires an agency to furnish access to records "upon request by any individual." 5 U.S.C. § 552a(d)(1).   Ms. ElHelbawy has acknowledged that she now has the documents and forms she sought.   (See Doc. # 7 at 7 of 19, ¶ 22, 13 of 19, ¶ 7, 14 of 19 ¶¶ 11-13).   To the extent that Ms. ElHelbawy is alleging a claim related to 5 U.S.C. § 552a(d)(1), she has obtained all the relief to which she would be entitled.   "Privacy Act cases premised upon a failure to disclose records upon the subject individual's request are remedied solely by injunctive relief directing the agency to make the required disclosure."   *Jackson v. Shinseki*, No. 10-cv-02596-MSK-CBS, 2011 WL 3568025, *6 (D. Colo. Aug. 9, 2011) (citing 5 U.S.C. §§ 552a(g)(1)(B), (g)(3)(A)) (observing that

"the VA can resolve this action simply by disclosing the material requested by Mr. Jackson," and

that by such disclosure, he "will have obtained all of the relief available to him in this action"), *aff'd*,

526 F. App'x 814 (10th Cir. 2013).   *See also Bloom v. Social Security Admin.*, 72 F. App'x 733,

734 (10th Cir. 2003) (affirming dismissal of plaintiff's Privacy Act disclosure claim as moot

because the "SSA had already turned over all requested documents to [the plaintiff]").   Ms.

ElHelbawy does not state a plausible claim to which relief can be granted under subsection

(d)(1).[7]

    In a third group of allegations, Ms. ElHelbawy asserts that the agency disclosed her

medical records "to other individuals and other agencies without a written request and prior

consent" and "misrepresented Plaintiff's medical records."   (*See* Doc. # 7 at 15 of 19, ¶¶ 17-21).

She does not allege what discrete records were disclosed, who made the disclosures, when they

were made, or to whom they were made.   As she states only conclusory allegations that the

information was disseminated, Plaintiff states no claim for relief based on an alleged disclosure of

medical information.

    "[E]ven if the Privacy Act is violated, no punishment may be imposed unless the agency

acted in a manner which was intentional or willful."   *Andrews v. Veterans Admin. of U.S.*, 838

F.2d 418, 424 (10th Cir. 1988).   *See also F.A.A. v. Cooper*, 132 S. Ct. at 1446 ("For violations

found to be intentional or willful, the United States is liable for actual damages.") (internal

quotation marks and citation omitted).   "[T]he Privacy Act's remedial provision authorizes

plaintiffs to recover a guaranteed minimum award of $1,000 for violations of the Act, but only if

they prove at least some actual damages."   *Id.*, at 1450-51 (internal quotation marks and

---

[7]     To the extent that Plaintiff is attempting to bring a claim under 5 U.S.C. § 552a(d)(2) for not being "given an opportunity to request correction of records" (see Doc. # 7 at 14 of 19, ¶ 13), she fails to state a claim because she does not allege facts showing any inaccuracy in the records, or that an inaccuracy caused a determination adverse to her.   *See* § 552a(g)(1)(C) (inaccuracy in a record must result in "a determination . . .   which is adverse to the individual" in order to create an actionable claim for relief).

citations omitted).   The Supreme Court has adopted "an interpretation of 'actual damages' limited to proven pecuniary or economic harm." *F.A.A. v. Cooper*, 132 S. Ct. at 1453.   "The case law construing [the intentional or willful] requirement sets a high bar." *Thompson*, 400 F. Supp. 2d at 12.   A willful or intentional disclosure requires "action so patently egregious or unlawful that anyone undertaking the conduct should have known it unlawful, or conduct committed without grounds for believing it to be lawful or action flagrantly disregarding others' rights under the Act." *Pippinger v. Rubin*, 129 F.3d 519, 530 (10th Cir. 1997) (citation omitted).   This standard reserves "civil liability only for those lapses which constituted an extraordinary departure from standards of reasonable conduct." *Kostyu v. United States*, 742 F. Supp. 413, 417 (E.D. Mich. 1990).   The "conduct [must be] more extreme than gross negligence." *Andrews*, 838 F.2d at 425.   Ms. ElHelbawy's bare conclusory allegations that the agency acted "knowingly and willfully" (*see* Doc. # 7 at 13 of 19, ¶¶ 3-6) do not plausibly support a finding that the agency "acted in a manner which was intentional or willful[.]"   *See* 5 U.S.C. §§ 552a(g)(1)(D) & (g)(4).   Claim Five is properly dismissed for failure to state a claim to which relief can be granted.


IX.    Sixth Claim for Relief for Violation of FLSA

The entirety of Ms. ElHelbawy's claim for willful violations of the FLSA consists of the following allegations: "1) Defendant willfully and knowingly failed to pay Plaintiff for hours worked between March 23, 2012 and November 15, 2012.   2) Defendant willfully and knowingly continued to task Plaintiff with work-related activities and administrative matters even after her effective removal on November 15, 2012."   (*See* Doc. # 7 at 16 of 19).

"The FLSA sets a national minimum wage[ ] ... and requires overtime pay of one and a half times an employee's hourly wage for every hour worked over 40 hours in a week. . . ."   *Landers v.*

*Quality Communications, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014), *as amended* (Jan. 26, 2015), *cert. denied*, 135 S. Ct. 1845 (2015) (citations omitted).   "[T]he requirements to state a claim of a FLSA violation are quite straightforward; they require the plaintiff to show a failure to pay overtime compensation and/or minimum wages to covered employees -- no more." *Renteria-Camacho v. DIRECTV, Inc.*, No. 14-2529, 2015 WL 1399707, at *2-3 (D. Kan. Mar. 26, 2015) ( (citation omitted).   "[A]n employee bringing an action under the FLSA has the burden of proving that he has performed work for which he was not properly compensated." *Thompson v. RCA Corp.*, No. 79-1259, 1981 WL 2347, at *2 (D.D.C. Oct. 22, 1981) (citation omitted).   The employee has met this burden only "if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.*   The court reviews Ms. ElHelbawy's SAC to determine whether the allegations plausibly state a claim that Defendant failed to pay minimum wages and overtime wages, "keeping in mind that detailed facts are not required." *Landers*, 771 F.3d at 641 (citing *Twombly*, 550 U.S. at 555).

Ms. ElHelbawy's bare allegations do not state a claim for which the FLSA provides a remedy.   She does not allege that she did not receive minimum wage or that she was not compensated for overtime hours.   To the extent that the well-pleaded facts suggest that Ms. ElHelbawy was a professional employee, she would be exempt from the FLSA's minimum wage and maximum hour requirements.   *See* 29 U.S.C. § 213 (providing an exemption to minimum wage and maximum hour requirements for "any employee employed in a bona fide executive, administrative, or professional capacity").   She does not allege the amount of lost wages she may be seeking.   Jurisdiction lies in the Court of Federal Claims for any FLSA claim exceeding $10,000, unless Ms. ElHelbawy waives her right to recover anything in excess of that amount.

*See Abbey v. United States*, 745 F.3d 1363, 1369 (2014) (Tucker Act gives Court of Federal

Claims exclusive jurisdiction over FLSA claims seeking more than ten thousand dollars in

damages).   The Sixth Claim for Relief is properly dismissed for failure to state a claim to which

relief can be granted.


X.     Motion for Leave to File Third Amended Complaint

       Ms. Elhelbawy has moved to file a third amended pleading.   "Although Fed.R.Civ.P. 15(a)

provides that leave to amend shall be given freely, the district court may deny leave to amend

where amendment would be futile."   *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1018

(10th Cir. 2013) (citation omitted).   "A proposed amendment is futile if the complaint, as

amended, would be subject to dismissal."   *Id.* (internal quotation marks and citation omitted).

       Ms. ElHelbawy has already filed three iterations of her pleading.   (See Docs. # 1, # 6, # 7).

On December 17, 2014, in response to Defendant's Motion to Dismiss, she sought leave to again

amend her pleading.   (*See* Courtroom Minutes/Minute Order (Doc. # 35)).   The court permitted

her until January 9, 2015 to file a motion for leave to file a third amended complaint.   (*See id.*).

The court directed both orally and in writing that her motion "MUST contain the proposed

amended complaint."   (*See id.*).   Ms. ElHelbawy did not timely file a motion for leave to file a third

amended complaint.   (*See* Courtroom Minutes/Minute Order (Doc. # 37)).   The court then

afforded her additional time, until February 17, 2015, to file a third amended complaint.   (*See id.*).

On February 17, 2015, Plaintiff filed her Motion for Leave to File Amended Complaint (Doc. # 39).

She generally states that she "seeks to consolidate her two cases into one case" and "to add

specificity to her allegations in a situation where all defendants are aware of the circumstances

giving rise to the action."   (*See id.* at 5 of 5).   In her Response, Ms. ElHelbawy fails to address

most of the issues raised by Defendant's Motion, yet asks "for leave to file an Amended Complaint addressing the issues raised in the Defendant's motion to dismiss."   (*See* Doc. # 25 at 14 of 14). However, she failed to submit a proposed third amended complaint or to explain how the defects in the SAC would be cured.   *See Reinhardt v. Oklahoma ex rel. Dist. Attorneys Council*, No. 15-7008, 2015 WL 4880468, at *1 (10th Cir. Aug. 17, 2015) ("district court did not abuse its discretion in denying Plaintiff an opportunity to file yet another amended complaint when the motion seeking permission to do so failed to explain how the defects in the second amended complaint would be cured").

"Undue" delay is grounds for denying a motion to amend.   *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006).   *See also Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) (affirming denial of motion to amend filed eight months after original complaint). Whether a delay is "undue" depends "primarily on the reason for the delay."   *Minter*, 451 F.3d at 1206.   "[D]enial of leave to amend is appropriate when the party filing the motion has no adequate explanation for the delay."   *Id.*   (internal quotation marks omitted).   The SAC had been pending for seven months and Defendant's Motion to Dismiss had been pending for four months before Ms. ElHelbawy again sought to amend.   Ms. ElHelbawy offers no explanation for her delay in filing her most recent motion to amend.   The motion to amend may properly be denied for failure to submit a proposed third amended complaint, failure to comply with the court's order permitting Ms. ElHelbawy to file a fourth iteration of her pleading, failure to specify how the deficiencies will be corrected, and undue delay.

Accordingly, IT IS ORDERED that:

1.      Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (filed October 27, 2014) (Doc. # 19) is GRANTED and this civil action is DISMISSED.

2.      Plaintiff's Motion for Leave to File Amended Complaint (filed February 17, 2015) (Doc. # 39) is DENIED.

DATED at Denver, Colorado this 21st day of September, 2015.

BY THE COURT:


  s/ Craig B. Shaffer
United States Magistrate Judge